**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAURA MONCINI-ROTOLO,<br><br>Plaintiff,<br><br>vs.<br><br>BELLE VERNON AREA SCHOOL DISTRICT,<br><br>Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-CV-01883-MJH |

**MEMORANDUM OPINION**

On December 5, 2025, Plaintiff Laura Moncini-Rotolo filed the instant three-count Complaint, alleging hostile work environment and retaliation claims under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131 *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.* ("PHRA"). Presently before the Court is Belle Vernon Area School District's ("Belle Vernon") Motion to Dismiss Count I (Retaliatory Discharge & Post Discharge Retaliation under the ADA), Count II (Hostile Work Environment under the PHRA), and Count III (Retaliatory Discharge and Post-Discharge Retaliation under the PHRA) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's claims arise from her employment as a Certified School Nurse at Defendant Belle Vernon's Rostraver Elementary School, located at 300 Crest Ave, Belle Vernon, PA 15012, as well as her suspension and eventual termination from that position. (ECF No. 1).

Upon consideration of Plaintiff's Complaint, (ECF No. 1), Defendants' Motion to Dismiss and accompanying brief, (ECF Nos. 6 & 7), and Plaintiff's Response in Opposition and

accompanying brief, (ECF No. 11 & 12), and for the following reasons, Defendants' Motion to Dismiss will be denied.

## I. Statement of Facts

Plaintiff Laura Moncini-Rotolo is a registered Pennsylvania nurse who has held her nursing license since 2008. (ECF No. 1 ¶ 17). Plaintiff earned a Bachelor of Science degree in Nursing from Penn State University and a Certification in School Nursing from Slippery Rock University. (*Id.*) Plaintiff alleges that, in 2009, she began working as a Substitute School Nurse at Defendant Belle Vernon's Rostraver Elementary School ("Rostraver"). (ECF No. 1 ¶ 18). In 2010, Defendant promoted Plaintiff to the full-time position of Health Room Assistant. (*Id.* ¶ 19). In 2014, Defendant promoted Plaintiff to the full-time position of Certified School Nurse. (*Id.* ¶ 20). According to Plaintiff, she remained in that position until her alleged termination on April 15, 2025. (*Id.* ¶ 47).

In 2022, Plaintiff informed Defendant's Superintendent, Dr. Kenneth Williams, that she suffered from severe anxiety that affected her major life activities. (ECF No. 1 ¶ 21). According to Plaintiff, she is disabled, or perceived to be disabled, because of her severe anxiety. (*Id.*) During this conversation, Plaintiff requested that Dr. Williams reasonably accommodate her disability by permitting her to bring her psychiatric service dog, Charleigh, to Rostraver while performing her duties as a Certified School Nurse. (*Id.*) Plaintiff alleges that Dr. Williams orally approved her accommodation request and did not require her to provide any medical documentation. (*Id.* ¶ 21, 23).

Following Dr. Williams' oral approval of her accommodation request, Plaintiff claims she began bringing Charleigh to work with her in May 2022, and Charleigh's presence allowed her to

perform her essential job functions. (ECF No. 1 ¶ 22). According to Plaintiff, there were no problems associated with Charleigh's presence at Rostraver during the August 2022 to May 2023 school year. (*Id.*) Having encountered no difficulties bringing Charleigh in the previous year, Plaintiff claims she again brought Charleigh to Rostraver for the next school year, beginning in August 2023. (*Id.*) Plaintiff claims that, through Dr. Williams's oral approval of Charleigh's presence and Defendant's conduct during the August 2022 to May 2023 school year, Defendant recognized her disability and provided her with a reasonable accommodation. (*Id.* ¶ 23).

On September 12, 2023, Plaintiff received the following email from Defendant's Principal, Zachary Just:

> I have some bad news to share. The district is looking to add therapy dogs in all buildings. As they have started to go down this road, it has come to the attention of the district that we presently have no policy on the use of therapy dogs. Any dog in the building should also be on the school's insurance in case a student and/or staff would get bit. Starting today, Charl[eigh], Nico, and any other dog must have their certification to come into the building. If you do not have a certificate or when you/they complete their training to get one, please provide me with a copy. I can then share that with the administration, who will get them on our insurance. I do believe everyone recognizes the benefit of the dogs in our building, the district just wants to ensure we are doing things the right way. See me with any questions.

(ECF No. 1 ¶ 25).

On September 13, 2023, Defendant's Interim Superintendent provided Plaintiff with a copy of a policy manual titled "Service Animals in Schools, September 22, 2014." (ECF No. 1 ¶ 26). The manual specified the requirements for "service animal[s]," including vaccination records, a description of the functions the animal was trained to perform, and verification of the need for the animal. (*Id.*) According to Plaintiff, she submitted the requested information to Defendant in October 2023, including an October 20, 2023, letter from her Certified Nurse Practitioner regarding her anxiety. (*Id.*) In response, Plaintiff received an email from Defendant's new Superintendent, Dr. Timothy Glasspool, stating, in relevant part, that "[i]n order for an ADA

accommodation to be granted, the District must be provided with a diagnosis, and the 'work or performance task' the animal will execute for the individual with a disability." (*Id.* ¶ 27).

Plaintiff alleges that on November 30, 2023, she received a letter from Dr. Glasspool that changed Defendant's policy concerning her ability to bring Charleigh to work and continued to increase the requirements for Charleigh's return, including a demand that Plaintiff produce her entire mental-health counseling records. (*Id.* ¶ 29). Plaintiff also claims that she had performed her job satisfactorily with Charleigh present for an entire school year and that Defendant suffered no undue hardship from Charleigh's presence. (*Id.* ¶ 31). According to Plaintiff, the only things that changed were the Defendant's Superintendent and policies. (*Id.*)

Plaintiff claims that Defendant failed to properly engage in the ADA/PHRA Interactive Process during the start of the 2023 school year. (ECF No. 1 ¶ 32). Plaintiff further claims that this lack of proper engagement followed Dr. Glasspool's appointment as Belle Vernon's Superintendent, whom Plaintiff alleges did not approve of the accommodation provided by her predecessor, Dr. Williams. (*Id.*) Additionally, because Charleigh was taken out of service on or about September 12, 2023, Plaintiff claims that she had to retrain her service dog at her own expense. (*Id.* ¶ 34).

On or about January 16, 2024, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1 ¶ 35). Following the filing of her EEOC Charge, Plaintiff claims the Defendant began retaliating against her through adverse personnel actions, including hyper-scrutiny of her job performance. (*Id.* ¶ 37). According to Plaintiff, this hyper-scrutiny led to an "unjustified" January 30, 2025, *Loudermill* letter scheduling

a *Loudermill* hearing for February 5, 2025.[1] (*Id.*) The January 30, 2025, *Loudermill* letter accused Plaintiff of refusing to address concerns with her supervisors, failing to alert her supervisors to hazardous conditions, and failing to provide consultations to staff. (*Id.* ¶ 38).

Plaintiff claims she appeared for the scheduled February 5, 2025, *Loudermill* hearing, but Defendant cancelled the hearing because Plaintiff retained counsel to accompany her. (*Id.* ¶ 39). Defendant subsequently rescheduled the hearing for February 18, 2025 (*Id.*) The *Loudermill* hearing proceeded on February 18, 2025, without Plaintiff's attorney present. (ECF No. 1 ¶ 40). During the hearing, Plaintiff claims that she was "interrogated" by Defendant's Board of Education (the "Board") and the Board's outside legal counsel. (*Id.*) According to Plaintiff, the hearing culminated in a two-week suspension without pay, a directive to obtain a fitness for duty evaluation, and a requirement that she sign an overly broad medical-release authorization. (*Id.*) Defendant memorialized these directives in a February 20, 2025, *Loudermill* determination. (*Id.* ¶ 41).

On February 25, 2025, Defendant issued Plaintiff another *Loudermill* letter, accusing her of willful neglect of duty, persistent negligence, and improper conduct. According to Plaintiff, Defendant issued this letter in retaliation for her attorney's accusations that Belle Vernon had engaged in ADA and PHRA retaliation.[2] (*Id.* ¶ 42). The February 25, 2025, *Loudermill* letter notified Plaintiff of another *Loudermill* hearing scheduled for March 4, 2025. (*Id.*)

On March 4, 2025, Plaintiff attended the *Loudermill* hearing with her private attorney. (ECF No. 1 ¶ 43). Plaintiff claims her attorney offered to make reasonable modifications to the

---

[1] A public employee with a property interest in their employment is entitled to a pretermination hearing known as a *Loudermill* hearing prior to an action of removal. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). This hearing process is not at issue in the instant case.

[2] Plaintiff's Complaint does not identify where or when her attorney's objections regarding ADA and PHRA retaliation occurred.

medical releases and agreed to participate in a fitness-for-duty evaluation conducted by a doctor selected by the Defendant. (*Id.*) Plaintiff further claims that her attorney notified the Board and its outside legal counsel that, before Plaintiff requested a reasonable accommodation for her disability, she had a good performance record and had never been disciplined by Defendant. (*Id.*) Plaintiff's attorney asserted that Defendant's actions against Plaintiff were a part of a pattern of unlawful retaliation in response to her January 16, 2024, EEOC Charge. (*Id.*) At the same hearing, Plaintiff claims her attorney advised the Board and its outside legal counsel that, if Plaintiff was discharged in retaliation for filing her EEOC Charge, she would seek legal redress. (*Id.*)

On March 6, 2025, Plaintiff received a *Loudermill* Determination letter suspending her without pay, effective March 5, 2025. (ECF No. 1 ¶ 44). The letter also prohibited her from entering Defendant's property or using Defendant's equipment, including her school issued iPad. (*Id.*) On March 18, 2025, Plaintiff received a Statement of Charges and Notice of Hearing, accusing her of "insubordination, intemperance, incompetency, willful neglect of duties, persistent negligence, improper conduct, and/or violation of and failure to follow school laws of the Commonwealth of Pennsylvania and official duties and . . . established policy of the Board and School Directors." (*Id.* ¶ 45). On April 26, 2025, Plaintiff received a letter from Defendant stating that the Board terminated her employment on April 15, 2025. (*Id.* ¶ 47). Plaintiff further claims Defendant's alleged retaliation continued after her termination when Defendant filed a formal complaint against her with the Office of Chief Counsel of the Pennsylvania Department of Education. (*Id.* ¶ 50).

Plaintiff claims that her private attorney subsequently received the following letter from the Pennsylvania Governor's Office of Chief Counsel, which rejected Defendant's accusations against her:

> By letter dated May 14, 2025, the Office of Chief Counsel of the Pennsylvania Department of Education informed your client [t]hat we received a formal complaint alleging that she failed to complete required reports for the Department of Health, did not provide nursing care to students, did not appropriately supervise nurses and other health staff, and failed to provide the District with requested releases for medical information. At that time, I also informed your client that these allegations, if true, were a basis for disciplinary action and the Department would conduct a preliminary investigation. Please be advised that the Department has completed its investigation, and finds that there is no probable cause to believe that there are grounds to pursue disciplinary action. Therefore we are dismissing the complaint and our file is now closed.

(ECF No. 1 ¶ 50).

## II. Relevant Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson,* 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations [of a complaint] must be enough to

raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs. Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile where an amended complaint "would fail to state a claim upon which relief could be granted." *M.U. v. Downingtown High Sch. E.*, F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

## III. Discussion

### A. Retaliation & Post-Discharge Retaliation claims under the ADA (Count I) and the PHRA (Count III)

Defendant argues that Plaintiff has failed to allege a *prima facie* case of retaliation under the ADA because she has alleged no facts rebutting the purported legitimate reasons for Belle Vernon's employment decisions.[3] (ECF No. 7 at 3–4). Defendant further argues that Plaintiff is time-barred from asserting that she suffered from a disability under the ADA and that Defendant failed to reasonably accommodate her request for accommodation. (*Id.* at 5). Defendant claims that Plaintiff's Complaint fails to allege any causal connection between the dispute concerning her service dog and the termination of her employment. (*Id.* at 6). Defendant also argues that, as a union-represented employee, Plaintiff was required to contest her dismissal through the grievance procedures set forth in the collective bargaining agreement. (*Id.* at 7).

In her response, Plaintiff argues that her claims are not preempted by her union affiliation. (ECF. No. 12 at 11). Defendant did not attach the referenced Collective Bargaining Agreement to its brief, so the Court cannot determine whether Plaintiff was required to utilize the Union grievance procedure.[4] Plaintiff further argues that she has adequately alleged a *prima facie* case,

---

[3] Under the ADA, a plaintiff must file a claim with the EEOC within 300 days of the complained-of conduct. *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-5(e)(1)). Further, a plaintiff must file suit within ninety days of receiving a right-to-sue letter from the EEOC. *See Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003) (citing 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after giving of such notice [by the EEOC,] a civil action may be brought."). Here, Plaintiff filed her second EEOC Charge/PHRC Complaint on April 28, 2025, alleging that the Defendant unlawfully retaliated against her by discharging her on April 26, 2025—which, as pled, is within 300 days of the complained-of conduct. (ECF No. 1 ¶ 50); *Mercer*, 608 F. App'x at 63. Further, Plaintiff alleges she received the EEOC's Determination and right-to-sue letter on September 10, 2025. Plaintiff filed the instant complaint on December 5, 2025—which, as pleaded, is within ninety days of her receipt of the right-to-sue letter, as required by 42 U.S.C. § 2000e-5(f)(1). *Ebbert*, 319 F.3d at 108. Therefore, Plaintiff has adequately exhausted the administrative remedies available to her for Counts I & III.

[4] This Court need only require the CBA's grievance procedure where the CBA clearly and unmistakably requires employees to arbitrate statutory claims. *See Wright v. Universal Mar. Servs. Corp.*, 525 U.S. 70, 79–82 (1998) (holding that a collective bargaining agreement did not require an employee to exhaust its grievance procedure before pursuing an ADA claim in federal court because the agreement did not "clearly and unmistakably" waive the employee's right to a judicial forum for statutory claims). Because Defendant failed to provide the CBA, the Court cannot analyze

including the causation element of her retaliation claim, because she was suspended without pay on the same day as her "last day to file suit under the ADA" expired. (*Id.* at 9–10). Plaintiff further claims that the grounds asserted for her termination, being the same as those underlying the earlier disciplinary actions, support a finding of causation. (*Id.* at 10).

The ADA prohibits retaliation against an individual who "has opposed any act or practice made unlawful by [the ADA]" or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a). The elements of an ADA retaliation claim are as follows:[5] (1) the plaintiff engaged in protected conduct; (2) the plaintiff suffered an adverse employment action by the defendant; and (3) there is a causal relationship between them. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004). Even where a plaintiff has not pleaded sufficient facts to establish a disability under the ADA, "the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997). Thus, "[a]n individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA."[6] *Id.*

---

whether its language clearly and unmistakably waived Plaintiff's right to review in this Court for her claims. Accordingly, the Court cannot rule on this issue at this time.

[5] Title VII, Section 1981, the ADA, and the PHRA, all have the same elements for retaliation claims. *See Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (equating Title VII and the PHRA); *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) (setting out elements of retaliation under Section 1981); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (analyzing ADA retaliation claims under Title VII framework). Therefore, we analyze Count I (ADA Retaliation & Post-Discharge Retaliation) and Count III (PHRA Retaliation & Post-Discharge Retaliation) coextensively. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (noting Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts").

[6] In its brief, Defendant argues that "Plaintiff admitted that she is time-barred from asserting that she suffered from a disability under the ADA and that the Defendant failed to reasonably accommodate her request for accommodation . . . . [t]hese claims are now time-barred based upon Plaintiff's failure to file a timely lawsuit following the EEOC's issuance of a right to sue notice." (ECF No. 7 at 5). Although Plaintiff did not sue within the applicable limitations period for claims arising from her January 16, 2024, EEOC Charge/PHRC Complaint, "unlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010). Consequently, Plaintiff's claim "she [is]

To establish her claim, Ms. Moncini-Rotolo must first plead that she engaged in protected conduct under the ADA. The ADA prohibits an employer from retaliating against an employee for engaging in certain protected conduct. *See* 42 U.S.C. § 12203(a); *Krouse,* 126 F.3d at 502. Conduct protected from retaliation under the ADA includes filing an EEOC charge and requesting a reasonable accommodation for a disability. *Shellenberger, v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003). Plaintiff alleges that she filed an EEOC Charge/PHRC Complaint on January 16, 2024, and that she previously requested and was granted a reasonable accommodation for her disability—both of which constitute protected activity under the ADA. *Id.*; (ECF No. 1 ¶ 35). Taking these facts as true, at this stage, Plaintiff's Complaint contains sufficient factual material regarding the first prong of her *prima facie* ADA Retaliation claim.

Second, Plaintiff must plead that Belle Vernon took an adverse employment action against her. The Third Circuit has described an adverse employment action as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotations omitted). In an ADA Retaliation analysis, a suspension without pay is an adverse employment action. *See Keytanjian v. Cnty. of Chester*, No. CV 17-530, 2018 WL 878765, (E.D. Pa. Feb. 14, 2018) (citing *Jones v. SEPTA*, 796 F.3d 323 (3d Cir. 2015) (noting that a suspension with pay is not an adverse employment action but that a suspension without pay meets the *prima facie* case)). Termination, of course, constitutes an adverse employment action within the meaning of the ADA. *Sturgis v. Diamond Hosp. Servs. LLC*, No. 1:24-CV-241, 2026 WL 906745, at *6 (W.D. Pa. Apr. 2, 2026) (citing *Bossi v. Bank of Am.*, No. 3:14-CV-02301, 2016 WL 4446444, at *3 (M.D. Pa. Aug. 19, 2016) ("It is well settled that termination is an adverse

---

disabled, or perceived to be disabled" is sufficient for purposes of the Court's analysis of Counts I and III. (ECF No. 1 ¶ 21).

employment action.”)). Plaintiff claims that she received a *Loudermill* determination suspending her without pay on March 6, 2025, and that Belle Vernon subsequently terminated her employment effective April 15, 2015. As such, and at this stage, Plaintiff’s Complaint contains sufficient factual allegations regarding the adverse employment action prong of Plaintiff’s *prima facie* ADA Retaliation case.

The remaining issue, therefore, is whether Plaintiff has pleaded facts that suggest a causal link between her protected conduct and the alleged adverse employment actions taken against her. To show the existence of a causal link, a plaintiff must plead facts showing “an unusually suggestive temporal proximity” or a “pattern of antagonism coupled with timing to establish a causal link.” *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In the absence of either of these factors, courts may consider the record as a whole to determine whether a retaliatory motive can be inferred. *Farrell v. Planters Lifesavers Co*, 206 F.3d 271, 281 (3d Cir. 2000). Indeed, the Third Circuit has explained that it “has set forth no limits on what [courts] have been willing to consider” in determining whether a causal link exists. *Id.*

Plaintiff alleges that Defendant retaliated against her for filing her January 16, 2024, EEOC Charge/PHRC Complaint through two *Loudermill* letters, three *Loudermill* hearings (including a rescheduled hearing at which her attorney accompanied her), a suspension without pay and eventual termination, and an allegedly unfounded post-discharge complaint to the Pennsylvania Governor’s Office of Chief Counsel. (ECF No. 1 ¶¶ 35–40, 42–45, 50). All of these events allegedly occurred after Plaintiff filed her January 16, 2024, EEOC Charge/PHRC Complaint. Additionally, Plaintiff alleges that, before filing her January 16, 2024, EEOC Charge/PHRC Complaint, she had never been warned, reprimanded, counseled, or disciplined by Defendant during sixteen (16) years of service. (*Id.* ¶ 43). Viewing these facts in the light most favorable to

Plaintiff, such allegations, at this stage, are sufficient to allege the causation element of her *prima facie* ADA Retaliation claim. *See Farrell*, 206 F.3d at 281. As such, and because ADA and PHRA retaliation claims are analyzed under the same standard, Defendants' Motion to Dismiss Plaintiff's Retaliation Claims at Counts I and III will be denied. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

**B. Hostile Work Environment claims under the PHRA (Count II)**

Defendant argues that Plaintiff has failed to allege a *prima facie* hostile work environment under the PHRA because she has alleged no facts demonstrating severe or pervasive harassment. (ECF No. 7 at 9). Defendant further argues that Plaintiff has not identified any specific harasser other than Defendant generally. (*Id.*) In her response, Plaintiff argues that retaliatory hyper-scrutiny and unjustified discipline are recognized as contributing causes to a hostile work environment. (ECF No. 12 at 13). Plaintiff also cites Defendant's alleged demands that she produce her mental-health records and submit to a fitness-for-duty examination as evidence of Defendant's hostile work environment. (*Id.* at 15).

As a threshold issue, Count II alleges a claim under the PHRA without an associated federal claim. (ECF No. 1 at 12). A federal court has subject matter jurisdiction over civil actions arising under "the Constitution, laws, or treaties of the United States" (federal question jurisdiction) and civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000 (diversity jurisdiction). 28 U.S.C. §§ 1331, 1332(a). Federal question jurisdiction exists only if a federal question is presented on the face of the complaint. *Club Comanche, Inc. v. Gov't of V.I.,* 278 F.3d 250, 259 (3d Cir. 2002).

Because the PHRA is state law, Count II does not present a federal question under § 1331. *Williams v. Pennsylvania Hum. Rels. Comm'n*, No. CV 14-1290, 2016 WL 6834612, at *10 (W.D.

Pa. Nov. 21, 2016) ("[t]he PHRA is a state law and not a federal statute or any source of federal rights."). Additionally, because both Plaintiff and Defendant are domiciled in Pennsylvania, diversity jurisdiction is also not present under § 1332. *Hong Nguyen v. KARAG Ford of Pittsburgh, LLC*, No. CV 19-986, 2020 WL 6063490, at *4 n.9 (W.D. Pa. Oct. 14, 2020) (noting there is no diversity jurisdiction under § 1332 when both parties are domiciled or have their principal place of business in Pennsylvania). Therefore, the Court's jurisdiction over Count II is based on supplemental jurisdiction under § 1367. *Zezulewicz v. Port Auth. of Allegheny Cnty.*, 290 F. Supp. 2d 583, 600 (W.D. Pa. 2003) ("the supplemental jurisdiction statute . . . permits federal courts to exercise subject matter jurisdiction over matters they would normally be precluded from entertaining").

Generally, a district court has supplemental jurisdiction over state-law claims "that are so related to claims" over which the court has original jurisdiction, such that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A state-law claim is "so related" to a federal claim if the two claims "derive from a common nucleus of operative fact." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165–66 (1997) (internal quotations omitted). And it is well-established that a federal court may exercise supplemental jurisdiction "as long as there is a federal claim which gives the court jurisdiction." *Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 989 n.48 (3d Cir. 1984).

Here, we have denied Defendant's Motion to Dismiss with respect to Counts I and III, so there remains a federal claim at issue. In her Complaint, Plaintiff bases Count II on the same nucleus of facts as Counts I and Count III: Defendant harassed Plaintiff through two *Loudermill* letters, three *Loudermill* hearings (including a rescheduled hearing at which her attorney accompanied her), a suspension without pay and eventual termination, and an allegedly unfounded

post-discharge complaint to the Pennsylvania Governor's Office of Chief Counsel. (ECF No. 1 ¶¶ 35–40, 42–45, 61). These events "were so severe and pervasive that it altered the terms of Plaintiff's employment and created a hostile . . . [work] atmosphere." (*Id.* at 61). The Court thus can properly exercise supplemental jurisdiction over Count II. *D.C. by & through A.T. v. Pittsburgh Pub. Schs.*, No. 2:19-CV-00012, 2020 WL 3195750, *9 (W.D. Pa. June 15, 2020) (finding that a PHRA claim was within the Court's supplemental jurisdiction where the federal and state claims arose from a common nucleus of operative fact and at least one corresponding federal claim remained).

Turning to the merits of Count II, hostile work environment claims under the PHRA are subject to the same analysis as hostile work environment claims under the ADA. *Sturgis,* 2026 WL 906745, at *8 n.5. To establish a hostile work environment based on disability under the PHRA, a plaintiff must show: (1) "[she] is a qualified individual with a disability under the ADA;" (2) "she was subject to unwelcome harassment;" (3) "the harassment was based on her disability or a request for an accommodation;" (4) "the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment;" and (5) "that [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 666 (3d Cir. 1999).

The principal issue raised by Defendant is whether the harassment was sufficiently severe or pervasive. To be sufficiently severe or pervasive, harassment must be shown to be both objectively and subjectively hostile or abusive. *Walton,* 168 F.3d at 667. In determining whether a work environment is sufficiently abusive, courts look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (courts should "concentrate not on individual incidents, but on the overall scenario").

Measured against this standard, the factual allegations, as detailed in Section II, satisfy the severe-or-pervasive threshold. *See supra* Section II. Plaintiff alleges that she was "interrogated" and berated by Defendants Board and its outside legal counsel. (ECF. No 1 ¶ 40). Further, Plaintiff alleges she was "directed to obtain a fitness for duty evaluation[,] and sign overly-broad medical release authorizations." (*Id.*) This is in addition to two allegedly "unjustified" *Loudermill* letters, three *Loudermill* hearings (including a rescheduled hearing at which her attorney accompanied her), and a suspension without pay. (*Id.* ¶¶ 35–40, 42–45). This conduct occurred from January 30, 2025, through Plaintiff's eventual termination on April 15, 2025. (*Id.* ¶¶ 37–47). Considered collectively, the incidents alleged in this time frame are sufficient to support Plaintiff's hostile work environment claim. *See Weaver v. GAT Airline Ground Support, Inc.*, No. CV 23-869, 2024 WL 757030, at *10 (W.D. Pa. Feb. 20, 2024).

At this stage, the Court considers only whether Plaintiff has plausibly alleged a hostile work environment, not whether she ultimately will be able to prove her claim. The Court considers the alleged conduct collectivity and in the context of the totality of the circumstances. Viewed in that manner, Plaintiff has plausibly alleged conduct sufficiently severe or pervasive to support a hostile working environment under the PHRA. Accordingly, Defendant's Motion to Dismiss Plaintiff's Hostile Work Environment Claim at Count II will be denied.

## IV. Conclusion

For the reasons stated above, Belle Vernon's Motion to Dismiss will be denied as to Counts I, II, and III. An appropriate Order will be entered.

DATED: September 30, 2026

BY THE COURT:

MARILYN J. HORAN
UNITED STATES DISTRICT JUDGE